Filed 2/26/13  P. v. Hernandez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO JAVIER HERNANDEZ,<br><br>        Defendant and Appellant. | A134490<br><br>(Solano County Super. Ct.<br> No. FCR287026) |

Defendant Francisco Javier Hernandez appeals from his conviction, after jury trial, of assault with a deadly weapon likely to produce great bodily injury, accompanied by findings that certain enhancement allegations were true, for which defendant was sentenced to a total of six years in state prison.  Defendant argues that the court erred when it denied his motion for acquittal on the assault charge because there was not substantial evidence to support a conviction; there was insufficient evidence to support the jury's finding that he personally inflicted great bodily injury on the victim; and the court abused its discretion in denying his motion to dismiss the information.  We affirm the judgment.

**BACKGROUND**

In September 2011, the Solano County District Attorney filed an information in which defendant was charged with attempted murder (Pen. Code, §§ 664, 187[1]) and assault with a deadly weapon, a knife, likely to produce great bodily injury (§ 245, subd.

_____

        [1] Further statutory references are to the Penal Code unless otherwise indicated.

1

(a)(1)).  It was further alleged regarding both counts that defendant personally used a deadly and dangerous weapon, a knife (§ 12022, subd. (b)(1)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)).  The information alleged the same counts and allegations regarding codefendant Michael Felix Aquino, not a party to this appeal, except that it was alleged that Aquino used a pipe as a deadly weapon.  Defendant (and Aquino) pled not guilty and denied the enhancement allegations.

Trial began in October 2011.  As we will discuss further, the charges against defendant and Aquino were based on the People's contentions that the two, and others, had attacked Brandon Lopez in the early morning hours at a party that began on the evening of December 13, 2008 at a house in Suisun, California.  The house was owned by the parents of two sisters, Tessa and Kyla Perrin.  The parents were absent on the night of the party.  Kyla, who lived at the house with her boyfriend, Aquino, and Tessa, along with her boyfriend, Lopez, were present.  The party had other attendees, including defendant, who was Aquino's friend.

The parties did not dispute that Lopez suffered from numerous stab wounds and other injuries as a result of the incident.  They did disagree over whether defendant acted as the aggressor or in self-defense, and there was conflicting testimony given by Tessa and Kyla regarding the issue.  As we will discuss, the People contended the evidence showed that, at least at one point in the fight, defendant, Aquino, and others attacked Lopez, defendant stabbing Lopez repeatedly, Aquino hitting Lopez in the head with a blunt object, and all of the attackers beating Lopez until he was senseless.  The defense contended the evidence showed that Lopez was the aggressor and that defendant stabbed him in self-defense.

The jury found defendant not guilty of attempted murder and the lesser included offense of attempted voluntary manslaughter, but guilty of assault by means likely to produce great bodily injury.  The jury found true the allegations that defendant personally inflicted great bodily injury on Lopez within the meaning of section 12022.7, subdivision (a), and personally used a deadly and dangerous weapon, a knife.

2

The trial court sentenced defendant to the midterm of three years for his assault conviction, three additional years based on the finding that he personally inflicted great bodily injury, and stayed sentence regarding personal use of a deadly and dangerous weapon, for a total sentence of six years in state prison.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I. *Defendant's Motion for Judgment of Acquittal*

Defendant argues that the trial court erred by denying his motion, brought pursuant to section 1118.1, for judgment of acquittal regarding the assault charge, for which defendant was ultimately convicted. Defendant argues there was not sufficient evidence to support the court's denial. We disagree.

### A. *The Relevant Proceedings Below*

At the close of the prosecution's case, defendant's counsel made a motion pursuant to section 1118.1 "generally as to all charges, given the inconsistencies of the testimony here, that clearly this was a defensive act on the part of [defendant], but especially as to [the attempted murder charge]. It's my position that attempted murder has not been shown at all in this case." Aquino's counsel joined in the motion as to the attempted murder charge.

The prosecution opposed the motion because, "given the nature of the injuries and the area of Lopez's body, the fact that he was struck in the head with a blunt object, he suffered a fractured skull, he was struck repeatedly in the head, and there is testimony that you can kill a person by hitting them in the head with a blunt object, and also the fact that he was stabbed somewhere between 16 and 18 times, and that you can kill a person by stabbing them—with all that, I think its up to the jury to determine what the defendants intended to do. The testimony from Tessa Perrin is that Lopez was not moving and they were continuing to strike him. [¶] And I think it's a question of fact for the jury whether it was an attempted murder."

3

The court ruled that, "as to both defendants, regarding the attempted murder, the court is going to deny the 1118.1."[2]

## B. *Analysis*

Section 1118.1 states in relevant part that "the court on motion of the defendant . . . , at the close of the evidence on either side . . . , shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.) In ruling on such a motion, "the trial court must consider whether there is any substantial evidence of the existence of each element of the offense charged, sufficient for a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." (*People v. Harris* (2008) 43 Cal.4th 1269, 1286.) The appellate court independently reviews the trial court's ruling. (*Ibid*.)

As defendant points out, in reviewing a challenge to the sufficiency of the evidence, appellate courts "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] If the verdict is supported by substantial evidence, [appellate courts] must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.)

Defendant does not deny that he stabbed Lopez with a kitchen knife that he obtained at the house, or that the evidence indicated Lopez had two or three stab wounds on his left arm, one on a finger of his right hand, and 13 or 14 on his left leg. Nor does

---

[2] The trial court denied defendant's motion without referring to the assault count, although defendant brought his section 1118.1 motion regarding all charges. Defendant characterizes the court's denial of his motion as including a denial regarding the assault count as well, and the People do not disagree. Therefore, we address the merits of defendant's appellate claim without considering further whether there were deficiencies in the court's ruling that required further action by defendant to preserve his appellate claim.

4

defendant deny that there was evidence that Lopez had a depressed skull fracture by his left eye socket and bleeding at multiple locations in his skull, which injuries led to surgery and continued to cause him problems at the time of trial. The parties also stipulated that the surgeon, if called to testify, would state that Lopez had a subdural hematoma, which could have been fatal, and suffered a "greenstick type fracture, with a depression in the center," a type of injury "caused by a blunt object, not stabbing with a knife."

However, according to defendant, certain evidence demonstrated that he "lacked criminal intent when he reacted to [Lopez's] violence" because it showed that he "intended to act only in self-defense[,] i.e., he had no criminal intent." Defendant's appellate argument appears premised on the factual theory that Lopez, in an intoxicated state, became aggressive, including towards Tessa, and attacked defendant without good reason, at which point defendant had no choice but to defend himself.

Specifically, defendant refers to Kyla's testimony that in the course of the party, Lopez kept yelling at Tessa and started getting "goofy," whereupon Lopez's friends left; just before the fight began, Lopez threw things, including a bottle that struck Tessa, and said the house was his because he put in its floors and tiles; defendant occupied himself in the computer room of the house during the evening; when defendant started to help clean up the kitchen, the "first thing that happened" was that Lopez grabbed defendant by the hair, pinned him to the ground, and punched him after defendant indicated he did not want to fight; after Tessa and Kyla had pushed defendant and Aquino out of the front door of the house, Lopez punched Tessa in the face when she tried to stop him from going outside and continuing the fight; and Lopez then continued the fight and had defendant in a headlock by the front stairwell. Defendant also points to testimony by an investigating detective for the City of Suisun, Eric Vera, that Tessa described Lopez to him as a "big muscular guy" and defendant as a "kid" and a "little guy." According to defendant, Lopez was a "drunken bully" and defendant "[b]y grabbing a knife off the

5

kitchen counter to protect himself, . . . took the only course left open to him by [Lopez]. He lacked criminal intent to commit the instant crime."

Defendant's argument and contentions are unpersuasive in light of the substantial evidence that supported the trial court's denial of his motion, which defendant does not address. This evidence included Tessa's testimony, as well as that of Detective Vera about statements made by Kyla shortly after the incident occurred.

Tessa testified that at some point during the party, she heard a seemingly friendly discussion in the kitchen, in which Lopez and Aquino said they were from the west side of Fairfield and defendant said he was from "EPA," which, defendant said, meant East Palo Alto. At some point after this discussion, defendant walked into the kitchen and asked Kyla, "Do you want me to handle anybody for you? Do you want me to kill anybody?" Kyla told him to be quiet.

Tessa testified that people started to leave the party, at which point Lopez was becoming intoxicated. She discussed leaving with Lopez and they argued about it in the kitchen as Tessa cleaned some orange juice that Lopez had somehow spilled on the floor. Although Tessa did not know how it spilled, it was not because Lopez had thrown it at her. Lopez did not push or hit her, or throw anything at her.

According to Tessa, others, including defendant, came into the kitchen, followed by Kyla. Defendant and Lopez began arguing and Tessa, although she did not see how the fight started, saw defendant punch Lopez in his left eye and Lopez then grab defendant by the hair and pull him to the floor. The two wrestled, making their way into the living room by some stairs, as Aquino said to let them fight. Tessa did not see any punches thrown or any kicking as the two wrestled.

Tessa said that she and Kyla were able to break up the fight and push defendant and Aquino out the front door, which Kyla closed; Tessa did not see whether Kyla locked it. In the living room, Tessa called Lopez's sister while Lopez stood by the stairs. Kyla was between them, "screaming" something like, "Oh, my gosh," as was Tessa.

6

According to Tessa, the door opened less than a minute after Kyla had closed it and defendant, followed by Aquino and another person, came back into the house. Defendant "[j]umped on top of [Lopez]" and "[t]hey started fighting by the staircase, on the staircase," punching at each other. Aquino hit Lopez over the head three or four times with what looked to Tessa like a two to three-inch long thick piece of wood; however, Tessa acknowledged that she told Detective Vera on the morning after the incident that it was a "pool stick," had no idea what the object was, and could only say that she saw "something being struck at" Lopez.

Tessa testified that Lopez fought back at first but, after he was hit over the head the second time, he did not move. He leaned against the wall as Tessa tried to get everyone off of him while screaming that they were going to kill him and that she and Lopez had a son. Lopez had blood on his face, head, and shoulders. Tessa said she pulled Lopez off the staircase and they landed on the floor. Tessa laid on top of him, belly to belly, as the attackers continued to hit him. Lopez's legs were exposed. Aquino kicked him and defendant punched Lopez's legs. She could not see if defendant had any weapons.

Tessa further testified that she screamed for Kyla to call the police and the attackers left. Lopez was "knocked out." He started to come to and started getting up. As he leaned on Tessa, they walked outside through the garage. Lopez was "out of it" and collapsed. An ambulance and the police arrived soon thereafter.

At trial, Kyla testified about the incident in a number of ways that were inconsistent with Tessa's account and, as we have already discussed, her account indicated that Lopez, not defendant, was the aggressor in the fight. She also testified that she only "vaguely" remembered talking to Detective Vera on the morning after the incident. She did not recall telling Vera various things about the incident.

Vera testified that he interviewed Kyla the morning after the incident. Among other things, Vera said, Kyla told him that when Lopez called some of his friends to come over to the house, defendant approached her and asked if there was a problem; Kyla told

7

him to calm down.  At another point, when Lopez and Tessa were arguing, defendant asked Kyla, " 'Do you want me to handle it?  I'll kill everybody in here.  I'll kill him,' " referring to Lopez.  Kyla again told him to calm down.

Vera further testified that Kyla said that, after defendant and Aquino were outside, the two banged on the locked door.  Lopez tried to push her aside and succeeded in unlocking the door, at which point defendant and Aquino rushed in.  She said she saw Aquino fighting Lopez, including punching him, and that she had her back to the people who were jumping into the fight.  She also told Vera that she saw a stick coming over her, which seemed like a broken broomstick or broom handle and that she doubted that Aquino was the one using it.  She also told Vera that she saw defendant had a knife and that she grabbed it from his hand while they were in the house and threw it outside.

The testimony of Tessa and Detective Vera was substantial evidence from which a jury could conclude defendant was guilty of the assault charge, if only because it indicates that defendant attacked Lopez, including with a knife, when he reentered the house, and not necessarily in self-defense.  Defendant does not argue otherwise, but instead, urges us to consider contrary evidence in his favor.  However, "it is not within our province to reweigh the evidence or redetermine issues of credibility" under a substantial evidence standard of review.  (*People v. Martinez* (2003) 113 Cal.App.4th 400, 412.)  Defendant's claim that the trial court erred in denying his section 1118.1 motion is without merit.

## II.  *The Great Bodily Injury Enhancement*

Defendant also argues that there was insufficient evidence to support the jury's conclusion that defendant, in committing the assault, personally inflicted great bodily injury on Lopez.  Again, we disagree.

Section 12022.7, subdivision (a),[3] provides that "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a

---

[3]  Former section 12022.7, subdivisions (a) and (f), which were repealed and reinstated without changes as of January 1, 2012, applied at the time of defendant's 2011

felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (§ 12022.7, subd. (a).) Section 12022.7, subdivision (f), provides that " 'great bodily injury' " meant "a significant or substantial physical injury." (§ 12022.7, subd. (f).) "A finding that the victim suffered great bodily injury must be upheld on appeal if supported by substantial evidence, even if the circumstances could also be reconciled with a contrary finding." (*People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 (*Bustos*).) As noted in *Bustos*, which we have found in our own, independent research, courts have upheld a great bodily injury finding "where the victim suffered multiple abrasions and lacerations, swelling and bruising" and "where the victim suffered multiple abrasions, asphalt burns, bruises, and temporary pain and limping." (*Ibid*., citing *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 and *People v. Escobar* (1992) 3 Cal.4th 740, 744, 750.)

As we have already indicated, in reviewing a challenge to the sufficiency of the evidence, appellate courts "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] If the verdict is supported by substantial evidence, [appellate courts] must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." (*People v. Koontz, supra*, 27 Cal.4th at p. 1078.)

Defendant argues that there was insufficient evidence to support the jury's great bodily injury finding because, although there was evidence that Lopez had suffered numerous stab wounds and a depressed skull fracture, there was also testimony that he was released from the hospital after five days because he was making a "pretty [good]" recovery, was unlikely to have suffered eye damage, had " 'progressed rapidly' " overall,

---

trial. (Stats 2010, ch. 711, §§ 4, 5, 10; Stats 2011, ch. 296, § 226; § 12022.7, subds. (a), (f).) Given that the previous and present provisions are the same, we refer to the present section 12022.7, subdivisions (a) and (f) in this discussion for the sake of simplicity.

was making " 'good progress with physical therapy,' " and was " 'ambulating without difficulty.' "  By the sixth day he was also "eating well."  His vital signs were normal when released and a physician testified that, when he was released, he was making " 'an excellent recovery.' "

Defendant's arguments are unpersuasive in light of our substantial evidence standard of review.  Defendant does nothing to explain why a reasonable juror could not conclude that Lopez's injuries, particularly his 16 to 18 stab wounds, were sufficient to support the challenged finding against him, regardless of evidence of recovery (which itself was not persuasive, given Lopez's testimony that he continued to have problems at the time of trial stemming from his injuries).  Like the cases cited in *Bustos*, we cannot say that as a matter of law the injuries suffered by Lopez did not constitute significant or substantial physical injury.  Therefore, defendant's claim that there was insufficient evidence to support the jury's conclusion that he had personally inflicted great bodily injury on Lopez lacks merit.

## III.  *Defendant's Motion to Dismiss*

Finally, defendant argues that the trial court abused its discretion when it denied his motion to dismiss the information filed against him, which filing, defendant argued, was a violation of his due process rights.  The People assert defendant has waived this appellate claim.  We agree, but for a different reason than that asserted by the People.

### A.  *The Relevant Proceedings Below*

The present case was the second initiated against defendant regarding the subject incident.  Previously, in August 2011, with trial scheduled to begin later in the month, the People moved pursuant to section 1385 to dismiss without prejudice the felony information filed against defendant in case No. FCR261662, as well as the informations filed against others, including Aquino.[4]  The People so moved because, they asserted,

---

[4]  Section 1385 states in relevant part that a judge may, "upon application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).)

10

they wanted to file additional charges against two of the charged defendants, two subpoenaed doctors were unavailable to testify on the dates set, and the People wanted relief from their stipulation not to use defendants' statements in their case in chief because "recent developments have made it clear that these statements are necessary to the People's case." Defendant opposed the motion on a number of grounds, including because anything other than a dismissal with prejudice would violate his due process rights.

The court granted the People's motion and dismissed the charges. Later that same month, August 2011, the People filed a felony complaint against defendant in case No. FCR287026. Defendant moved to dismiss this case, arguing that the grant of the previous section 1385 motion to dismiss was not in the furtherance of justice and violated his due process rights.

Defendant immediately filed a motion to dismiss the new action on the ground that "the procedure used by the District Attorney in the re-filing of the case denies [defendant] due process of law." Defendant argued that the trial court had previously abused its discretion by granting the People's motion to dismiss the prior action pursuant to section 1385, and that doing so had denied him his due process right to a speedy trial. Defendant also challenged other reasons asserted by the People for the dismissal of the prior action. He concluded that "the prosecution's motion to dismiss circumvented, rather than promoted, justice."

The court considered argument on defendant's motion to dismiss the new action at the preliminary hearing. The parties informed the court that defendant had filed a writ with the appellate court regarding the court's dismissal of the prior action. This led to the following exchange between the court and defendant's counsel, Meenha Lee:

"THE COURT: All right. Ms. Lee . . . , you did indicate there was a writ. And is that concerning the propriety of the dismissal?

11

"MS. LEE:  It is, Your Honor.  And I'm asking separately for this court to dismiss based on the due process violations.  Obviously if the Court of Appeal grants my motion then that—that's a way that [defendant] will get the remedy.

"But I'm asking separately and alternatively for this court, now that, in fact, the case has been re-filed as an attempted murder, for the reasons I stated in the motion and arguments, that [defendant] has been actually prejudiced and that this is in violation of his due process rights, that it be dismissed for those reasons.

"THE COURT:  All right.  Does the writ include the due process violations for re-filing?

"MS. LEE:  Yes."

The court then ruled that "this motion to dismiss, it is incorporated in the writ . . . . And if the Court of Appeal does grant that, then your client, it appears to me, would not proceed in this case, so that would address your issues.  [¶]  I'm going to deny your motion to dismiss.  It appears to be the same issue, in part, that's being litigated right now."

The record submitted by the parties does not contain the appellate ruling on the writ discussed at the hearing.

**B.**  *Analysis*

Defendant argues the trial court abused its discretion in denying his motion to dismiss the new information because "justice clearly favored" his request for dismissal. He contends that the People sought dismissal to obtain a continuance of the upcoming trial "in the guise" of a dismissal motion.  He further argues that the People, by stalling, denied defendant due process and a fair trial because he was 17 years old at the time of offense and "remained in custody for years after that while awaiting trial."

Defendant's appellate arguments are unpersuasive because they fail to address the actual basis for the trial court's denial of his motion:  that there was a pending writ before the appellate court raising the same issues at the time defendant made his motion. "Perhaps the most fundamental rule of appellate law is that the judgment challenged on

12

appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown' "].)  Defendant does not attempt to explain why the trial court's denial of his motion for the reasons actually relied on by the court was an abuse of its discretion.  Therefore, we reject his claim.

Given our conclusion, we have no need to, and do not, address the People's arguments that defendant has forfeited his appellate claim because either the appellate court denied him relief for stated reasons that became the law of the case or did so without stating reasons, which would have required defendant to ask the trial court for a ruling on the merits of his motion before bringing his appellate claims.

## DISPOSITION

The judgment is affirmed.


_____
Lambden, J.


We concur:


_____
Haerle, Acting P.J.


_____
Richman, J.


13