Filed 9/27/16  P. v. Rios CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051924 |
| v. | (Super. Ct. No. 14NF2299) |
| JAVIER SALAZAR RIOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Javier Salazar Rios of domestic battery with corporal injury (Pen. Code, § 273, subd. (a) [counts 1-2, 4]; all statutory citations are to the Penal Code), criminal threats (§ 422 [counts 3, 5]), and false imprisonment by violence or menace (§§ 236, 237, subd. (a) [count 6]). The jury also found Rios inflicted great bodily injury (GBI) (§ 12022.7, subd. (e) [count 1]), and personally used a deadly weapon (§ 12022, subd. (b)(l) [count 5]). Rios challenges the sufficiency of the evidence to support the jury's finding he inflicted GBI. For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Rios and T.R. had been in a relationship for 24 years, married for 12 years, and had three children together. T.R lived with Rios and their two sons in an Anaheim apartment.

T.R. described a long history of regular beatings by Rios beginning in 1988. He often struck her with his hands and fists, and also kicked her, resulting in black eyes and bruises on her body. He once struck her on the finger with a bamboo stick, which required surgery. In December 2008, the couple's daughter reported one of these incidents to school officials, but T.R. denied the abuse had occurred. T.R. moved out of the residence for about six months in July 2012, but moved back in after she lost her job. Rios resumed beating her about eight months later.

On Friday, May 23, 2014, T.R. returned home from work around 4:30 p.m. When the couple argued Rios punched T.R. in the ribs with his fist. The abuse continued over the next four hours. He struck her on the back, arms, stomach, ribs and face. T.R. estimated Rios struck her "at least 100 times" on this occasion. He also used a belt, striking her at least 50 times across her body.

The couple's adult daughter arrived on Friday evening with her children. She heard a whipping sound coming from her parents' bedroom and heard her mom

2

repeatedly ask Rios to "stop." The next morning, her mom had a "busted face," a black eye, a "busted" nose, bruises, and swelling all over.

Later that morning, T.R. sat in a recliner and Rios struck her in the face and back of the head. The blow broke her eyeglasses and left a scratch on her nose. Over the course of that day, Rios threatened T.R. with a baseball bat and hit her approximately 50 times with his hands.

The following morning, Sunday, May 25, Rios summoned T.R. into the garage to repair her glasses. He raised the volume on the radio and began hitting her torso and arms. When she tried to leave, he grabbed her sweatshirt and pulled, choking her, and bruising her neck. He pushed her near a tool box, where he grabbed a screwdriver, held it to her neck and told her he could kill her and hide the body. Rios stopped when their daughter entered the garage.

T.R. asked her daughter to call the police. When officers arrived, Rios and T.R. were seated at a table. T.R. appeared frightened. An officer saw bruises on T.R.'s face and arms. A physician who treated T.R. at the hospital on the afternoon of May 25 noted facial swelling and multiple bruises on her face and abdomen.

Following trial in January 2015, a jury convicted Rios as noted above. In May 2015, the trial court imposed a prison sentence of 10 years and eight months, comprised of a three-year midterm for domestic battery as charged in count 1, plus four years for inflicting great bodily injury as to that count. The court imposed consecutive or concurrent terms for the other offenses and the weapon enhancement.

II

DISCUSSION

*Substantial Evidence Rios Inflicted GBI During First Incident*

Rios challenges the sufficiency of the evidence to support the finding he inflicted GBI during the first incident, arguing that GBI must "encompass more than

3

bodily bruising." He notes T.R. suffered no injuries other than bruises and swelling, the treating physician "prescribed over-the-counter pain medication, and while T.R. experienced pain and difficulty moving for a week or two, she "did not testify her limited mobility impaired her ability to walk or to function in a normal manner." He also complains the evidence does not differentiate between the dates of injury.

On appeal, we must view the record in the light most favorable to the judgment below. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) The test is whether substantial evidence supports the verdict (*Jackson v. Virginia* (1979) 443 U.S. 307, 318; *People v. Johnson* (1980) 26 Cal.3d 557, 577-578), not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139 (*Crittenden*).) It is the jury's exclusive province to weigh the evidence, assess the credibility of the witnesses, and resolve conflicts in the testimony. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 (*Sanchez*).) Accordingly, we must presume in support of the judgment the existence of facts reasonably drawn by inference from the evidence. (*Crittenden*, at p. 139; see *People v. Stanley* (1995) 10 Cal.4th 764, 792 [same deferential standard of review applies to circumstantial evidence].) The fact that circumstances can be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) Consequently, an appellant "bears an enormous burden" in challenging the sufficiency of the evidence. (*Sanchez*, at p. 330.)

Section 12022.7 provides in relevant part: "(e) Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years. As used in this subdivision, 'domestic violence' has the meaning provided in subdivision (b) of Section 13700. [¶] (f) As used in this section, 'great bodily injury' means a significant or substantial physical injury."

4

Whether a particular injury satisfies the definition of GBI is a question of fact for the jury.  (*People v. Cross* (2008) 45 Cal.4th 58, 64, 66 (*Cross* ) [proof of GBI commonly established by the severity of the victim's physical injury, the resulting pain, or the medical care required to treat the injury]; *People v. Escobar* (1992) 3 Cal.4th 740, 750.)  Although there must be "a substantial injury *beyond* that inherent in the offense itself," the statutory test "contains no specific requirement that the victim suffer 'permanent,' 'prolonged'' or 'protracted' disfigurement, impairment, or loss of bodily function."  (*Escobar*, *supra*, at pp. 746-747, 750; *Cross, supra,* 45 Cal.4th at pp. 64, 66 [GBI does not require the victim to suffer permanent or long-lasting injuries].)

Appellate courts have rejected similar challenges to the evidentiary sufficiency of a GBI finding.  For example, in *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836, the defendant struck the victim repeatedly with a stick on different parts of her body.  The court noted the "testimony and exhibits display that [the victim] suffered multiple contusions over various portions of her body and the injuries caused swelling and left severe discoloration on parts of her body.  The injuries were visible the day after infliction to at least two lay persons at [the victim's] elementary school.  Further, there was evidence [she] suffered pain as a result of her injuries . . . .  [¶] A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.  Clearly it is the trier of fact that must in most situations make the determination.  Here, while the issue might be close it appears that there were sufficient facts upon which the court could base its finding of great bodily injury and such a finding therefore will not be disturbed on appeal."  (*Id.* at p. 836.)  In *People v. Sanchez* (1982) 131 Cal.App.3d 718, the appellate court found sufficient evidence supported a GBI finding where the defendant grabbed the rape victim by the throat and choked her, slapped her face with an open hand and fist, and wrapped a belt around her neck, the victim suffered numerous bruises on her face, multiple superficial abrasions and

lacerations on her back and neck, although none of the cuts or scratches required suturing.

Here, the jury reasonably could conclude T.R. suffered GBI during the first incident. Rios struck T.R. approximately 100 times over the course of four hours with his fists, feet, and a belt. T.R. testified the first attack lasted the longest of the three days of brutalization; it was the only day Rios used a belt to hit her, and it was when the bulk of her injuries occurred. According to T.R.'s daughter, the morning after this beating her mom had a "busted face," a black eye, a "busted" nose, bruises, and swelling all over. T.R. and her daughter's testimony established T.R. suffered GBI on Friday May 23.

### III

### DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

6