Filed 3/12/20

## <u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>BELINDA ISABEL QUINONEZ,<br><br>　　Defendant and Appellant. | F076433<br><br>(Kern Super. Ct. No. BF166446A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

**＊** Pursuant to California Rules of Court, rules 81105(b) and 8.1110, the opinion and the concurrence are certified for publication with the exception of the Facts, Defendant's Trial Testimony, Convictions and Sentence, and parts II. and III. of the Discussion.

**SEE CONCURRING OPINION**

## INTRODUCTION

Appellant/defendant Belinda Isabel Quinonez was convicted of multiple felony offenses for punching a sheriff's deputy while she was in custody at the jail in Bakersfield: count 1, battery resulting in the infliction of serious bodily injury (Pen. Code,[1] § 243, subd. (d)); count 2, attempting to obstruct an executive officer by threat or violence (§ 69); count 3, assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); count 4, battery on a peace officer (§ 243, subd. (c)(2)); and count 5, assault by means of force likely to produce great bodily injury upon a peace officer (§ 245, subd. (c)); with great bodily injury enhancements alleged and found true for counts 2 through 5. The court found true the allegations that defendant had three section 667.5, subdivision (b) prior prison term enhancements.

Defendant was sentenced to an aggregate term of nine years in prison. On appeal, defendant argues the court incorrectly defined great bodily injury in jury instructions, which requires the reversal of two convictions and great bodily injury enhancements. Defendant further argues another count must be reversed because the court failed to instruct on a lesser included offense.

We must strike the true findings on the prior prison term enhancements given the recent legislative amendments to section 667.5, subdivision (b). We otherwise affirm.

## FACTS[*]

On November 30, 2016, defendant was arrested held in custody at the Central Receiving Facility, the downtown jail in Bakersfield. Defendant was in a standard jail

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[*] See footnote, *ante*, page 1.

2.

wheelchair because her right arm and both legs were amputated; she only had her left arm.[2]

Deputy Christine Brown was an officer at the jail. Brown was not working when defendant was brought into custody. Deputy Ashley Sanchez was the only female officer on duty at that time. Brown testified that Sanchez looked similar to her.

On December 1, 2016, Deputies Brown and Aaron Carrillo were on duty on the C Deck, where female inmates were housed. Brown was the only female officer on duty that day.

Around 3:40 p.m., Deputy Carrillo escorted defendant back to the jail's C Deck after she attended court. Defendant was in a wheelchair. She was not restrained in any way. Carrillo pushed her wheelchair and intended to place defendant in the same cell that she had been in prior to her court hearing.

Deputy Carrillo had never dealt with defendant before. Carrillo testified defendant's wheelchair was "too big for the cells. It's a single cell. It wouldn't fit in there. I told her to go in the cell, and she refused." Carrillo repeated the order two or three times; defendant again refused and pushed her wheelchair away from the cell door.

Deputy Carrillo believed defendant would be able to get into that cell since she had already been in it. Carrillo testified the jail did not have any particular training or protocols about how to get an inmate in a wheelchair into such a cell, and he did not know what to do.

Deputy Carrillo pushed defendant's wheelchair along the tier to look for his partner, Deputy Brown. Carrillo needed help since Brown was the only female deputy on duty. He also thought Brown might know how defendant previously got into that cell. Carrillo could not find Brown, so he pushed defendant's wheelchair back to the same cell

---

[2] According to the probation report, defendant's right arm and both legs were amputated after she was involved in a train accident in 2014.

to wait for Brown to return to the tier. Carrillo was the only deputy in the area, and he wanted to avoid touching defendant without witnesses being present so there would be no false accusations that he inappropriately touched a female inmate.

Deputy Lawson, a male deputy, arrived on the tier. Lawson directed defendant to go into the cell. Defendant again refused. Defendant was uncooperative, agitated, and angry. Defendant cursed the officers and said, " 'F[**]k you guys.' "

Deputies Carrillo and Lawson decided not to escalate the situation and waited for Deputy Brown to return to the tier to help defendant.

**Defendant Punches Deputy Brown**

After about five minutes, Deputy Brown returned to C Deck. She was the only female officer on duty that day and had been doing multiple assignments. Deputy Lawson asked her to help with defendant because she was uncooperative and would not return to her cell.

Deputy Brown went to the cell. Defendant was sitting in her wheelchair outside the cell and looking straight ahead. She did not appear to be crying. Deputies Lawson and Carrillo were present, and no one was saying anything.

Deputy Brown testified that she knew the wheelchair was too wide for the cell door. She asked defendant, " 'Can you get in and out by yourself or do you need assistance?' " Defendant started yelling. Brown asked why she was yelling since the deputies were not yelling at her. Brown testified she got very close to defendant to speak to her in the wheelchair.

Defendant replied, "You f[**]kers," and suddenly swung her left fist at Deputy Brown. Defendant hit Brown in the face. Brown felt a big jolt and grabbed her nose. She saw stars, felt pain in her face, and was dazed for a moment.[3]

---

[3] A video recording of the incident was played for the jury and was narrated by Deputy Carrillo and Deputy Brown.

4.

Deputies Carrillo and Brown testified they were familiar with the symptoms when inmates suffer panic attacks, which included rapid breathing and complaints of chest pain.  Both Carrillo and Brown testified defendant did not exhibit any of these symptoms, and she did not ask for medical assistance prior to punching Brown.  Deputy Lawson testified defendant had looked agitated and irritated before she punched Brown, but defendant did not have difficulty breathing or appear afraid.

**Deputy Brown's Injuries**

Senior Deputy Hinkle heard a radio dispatch about a combative inmate on C Deck.  He immediately went to the area and saw Deputy Brown.  She was bleeding heavily from her nose, and the blood was flowing over her lips and chin and onto the floor.

Deputy Hinkle escorted Deputy Brown to the nurse's station.  Brown's nose was swollen and discolored.  A nurse held Brown's nose for about 15 minutes and applied gauze.  The bleeding stopped enough for Brown to be transported to the hospital.

Deputy Hinkle took Deputy Brown to Bakersfield Memorial Occupational Medicine for an examination and x-rays.  Brown had bruises and a laceration on her nose, and her nose was bent.

Deputy Brown had two separate fractures to her nasal bone and a deviated septum.  She was initially prescribed painkillers.  She was not allowed to return to work that day.  Brown was limited to light duty with no inmate contact for six weeks.  Brown had follow-up appointments and was referred to an ear, nose and throat specialist.  She was scheduled to have corrective surgery for the deviated septum.

At trial, Deputy Brown testified she decided not to have the surgery because she was informed it was painful, and she would have to stay on light duty for another six to eight weeks, so her nose could heal.  Brown still had a tingling sensation that ran down her nose because defendant punched her.

**Prior Incident**

Officer Trisha Watree of the Bakersfield Police Department testified she was dispatched to the El Morocco Hotel on May 12, 2015, to search defendant. Defendant was sitting down and Watree realized she was an amputee.

Officer Watree told defendant she was going to search her and asked if she had anything on her that would cut or poke Watree during the search. Defendant did not respond and just stared at her. Watree again said, "I'm going to search you," and "lightly" grabbed defendant's left arm. Defendant pulled her left arm away from Watree. Defendant turned her body toward Watree and used her left arm to punch Watree in the mouth. Watree's lip was bleeding and swollen.

Officer Watree testified an ambulance was present when she initially arrived at the hotel. However, defendant did not appear like she was in distress or in a state of panic. Defendant did not seem to have trouble breathing or appear to need medical attention before she punched Watree.

## DEFENDANT'S TRIAL TESTIMONY[*]

Defendant admitted she had three felony convictions for crimes of moral turpitude in 2005, 2010, and 2015.

Defendant testified that on the day before the incident in this case, she was arrested and taken to the jail. Deputy Brown pushed her wheelchair into cell No. 8; a male officer was also present. Defendant claimed that as she slowly got out of the wheelchair to transfer into the cell, Deputy Brown and the male officer threw her out of the wheelchair and onto the floor. Brown told defendant to change from her civilian clothes to the jail clothes in the cell, and the cell door was going to stay open. Brown and the male deputy stood there and watched her. Defendant was crying and still on the floor. She had to change clothes in front of both officers while the door was open. Defendant

[*] See footnote, *ante*, page 1.

6.

climbed onto the bed and kept crying. Defendant asked for the wheelchair to be pushed toward her, but Brown pushed it to the far side of the cell. The deputies did not give her a mattress or a blanket even though she asked for them, and she had to sleep in the cold cell that night.

Defendant testified she went to court the next day. When she returned from court, a male officer pushed her wheelchair to cell No. 8 and told her to get inside. Defendant testified she "nicely" asked Deputy Carrillo to place her in a different cell because of what happened the previous day. He became upset and again told her to get into the cell.

Defendant could hear a train in the distance, and she became agitated because she was hit by a train in 2014. Defendant started to suffer from anxiety and had flashbacks.

Defendant testified another male deputy arrived at the cell, and she froze and felt fearful. When Deputy Brown got there, defendant became scared and anxious because she was still upset about hearing the train. Defendant thought Brown was going to hit her, and defendant put up her arm to block Brown. Defendant did not intend to punch Brown, she did not know she hit Brown, and it was an accident.

Defendant testified the incident with Officer Watree was also an accident. She was having an anxiety attack, and someone came up to her. Defendant thought that person was trying to steal from her.

**Convictions and Sentence***

Defendant was charged and convicted of committing the following offenses on Deputy Brown: count 1, battery resulting in the infliction of serious bodily injury (§ 243, subd. (d)); count 2, attempting to obstruct an executive officer by threat or violence (§ 69); count 3, assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); count 4, battery on a peace officer (§ 243, subd. (c)(2)); and count 5, assault by means of force likely to produce great bodily injury upon a peace officer (§ 245,

---

\* See footnote, *ante*, page 1.

subd. (c)); with great bodily injury enhancements alleged and found true for counts 2 through 5.  (CT 201-216, 54-64)

The court found true the allegations that defendant had three section 667.5, subdivision (b) prior prison term enhancements.  (CT 216-217)

On October 4, 2017, the court sentenced defendant to an aggregate term of nine years in state prison.  (RT 409-410; CT 280-282, 289-291)

## DISCUSSION

## I.     The Jury was Correctly Instructed on Great Bodily Injury

Defendant argues the court gave the jury incorrect and ambiguous instructions on the definition of great bodily injury as it applied to counts 3 and 5, and the enhancements for the infliction of great bodily injury (§ 12022.7, subd. (a)) that were found true for count 2, 3, 4, and 5.  Defendant argues the allegedly ambiguous instructional definitions allowed the jury to find she inflicted great bodily injury on Deputy Brown merely if her injuries were "greater than 'minor' harm, without the need to find they were greater than 'moderate' harm," and thus reduced the People's burden of proof.  (AOB 23)

Defendant argues the court had a sua sponte duty to correct the allegedly ambiguous instructions.  (AOB 22)  In the alternative, defendant asserts counsel was prejudicially ineffective for failing to object to the instructions and request modifications.

### *A.     Factual Background*

On December 1, 2016, defendant was in custody at the Central Receiving Facility in Bakersfield.  Defendant was an amputee and confined to a wheelchair.  As she was being escorted to a cell, she was not handcuffed or restrained because of her physical condition.  Defendant was uncooperative and cursed the deputies.

Deputy Christine Brown arrived to assist defendant into the cell.  Brown leaned down to the wheelchair, got very close to defendant, and asked what kind of aid she needed.  Defendant cursed and yelled at Brown.

8.

Defendant suddenly swung her left fist and hit Brown in the face. Brown felt a big jolt and grabbed her nose. She saw stars, felt pain in her face, and was dazed for a moment.

Senior Deputy Hinkle testified Deputy Brown was bleeding heavily from her nose, and the blood was flowing over her lips and chin and onto the floor. Hinkle escorted Deputy Brown to the nurse's station. Brown's nose was swollen and discolored. A nurse held Brown's nose for about 15 minutes and applied gauze. The bleeding stopped enough for Brown to be transported to the hospital.

Deputy Hinkle took Deputy Brown to Bakersfield Memorial Occupational Medicine for an examination and x-rays. Brown had bruises and a laceration on her nose, and her nose was bent.

Deputy Brown had two separate fractures to her nasal bone and a deviated septum. She was initially prescribed painkillers. She was not allowed to return to work that day. Brown was limited to light duty with no inmate contact for six weeks. Brown had follow-up appointments and was referred to an ear, nose and throat specialist. She was scheduled to have corrective surgery for the deviated septum.

At trial, Deputy Brown testified she decided not to have the surgery because she was informed it was painful, and she would have to stay on light duty for another six to eight weeks, so her nose could heal. Brown still had a tingling sensation that ran down her nose because defendant punched her.

### B.     The Charges, Instructions, and Argument

In count 3, defendant was charged with assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The court instructed the jury with CALCRIM No. 875 on the elements of count 3.

In count 5, defendant was charged with assault by means of force likely to produce great bodily injury upon a peace officer while engaged in the performance of her duty (§ 245, subd. (c)). The court gave CALCRIM No. 860 on the elements of the offense.

9.

As to counts 2 through 5, the information alleged that defendant inflicted great bodily injury upon Deputy Brown (§ 12022.7, subd. (a)). The court instructed the jury with CALCRIM No. 3160 on the definition of the enhancement.

As relevant to defendant's appellate contentions, CALCRIM Nos. 875, 860, and 3160 contained the following identical definitions of great bodily injury: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

Defense counsel did not object to these instructions or the definitions contained therein.

In closing argument, the prosecutor argued that defendant was guilty of counts 2 and 5, and the enhancements should be found true, because defendant inflicted great bodily injury when she punched Deputy Brown with such force that Brown's nose was fractured in two places that left her nose crooked and caused a deviated septum. These injuries were "significant or substantial" and also permanent unless Brown decided to have corrective surgery.

Defense counsel did not directly address whether Deputy Brown suffered great bodily injury. Instead, counsel argued defendant was not guilty because she hit Brown by accident, and it was not intentional.

### C. *Forfeiture/Ineffective Assistance*

Defendant contends the instructions that defined great bodily injury were incorrect as a matter of law. Defendant did not object to these instructions but argues she has not forfeited these issues because the court had a sua sponte duty to correct the alleged errors, and the instructions violated her substantial rights.

The trial court has a sua sponte duty to instruct the jury fully as to the essential elements of the charged offense. (*People v. Flood* (1998) 18 Cal.4th 470, 481.) "[N]o forfeiture will be found where … the court's instruction was an incorrect statement of the law [citation], or the instructional error affected the defendant's substantial rights.

10.

[Citation.] Instructional error as to the elements of an offense is not waived by trial counsel's failure to object. [Citation.]" (*People v. Mason* (2013) 218 Cal.App.4th 818, 823.) " '[A]scertaining whether … instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim – at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)

To the extent defendant may have forfeited review, she raises the alternative argument that defense counsel was prejudicially ineffective for failing to object to the instructions. "To show ineffective assistance, [the] defendant must show that 'counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 761.) To determine if counsel's failure to object was ineffective and prejudicial, we must also address the merits of defendant's claim. (*People v. Osband* (1996) 13 Cal.4th 622, 693.)

We thus turn to the merits of defendant's instructional arguments.

### D.     *Great Bodily Injury*

We begin with the definition of great bodily injury. Section 12022.7, subdivision (a) requires imposition of an enhancement for any person who "personally inflicts great bodily injury" on someone other than an accomplice in the commission or attempted commission of a felony. "As used in this section, 'great bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).)

"Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) "[T]he injury need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage. [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 64.)

"Proof that a victim's bodily injury is 'great' – that is, significant or substantial within the meaning of section 12022.7 – is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*People v. Cross*, *supra*, 45 Cal.4th at p. 66.) While "any medical treatment obtained by the victim is relevant to determining the existence of 'great bodily injury' [citation], the statutory definition and relevant CALCRIM instruction … do not require a showing of necessity of medical treatment. Nor are we aware of any case authority imposing such a requirement." (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1150.)

Some physical pain or damage, such as "[a]brasions, lacerations, and bruising can constitute great bodily injury. [Citation.]" (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042; *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047–1048; see, e.g., *People v. Corona* (1989) 213 Cal.App.3d 589 [swollen jaw, bruises to head and neck and sore ribs were sufficient to show "great bodily injury"]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, disapproved on other grounds in *People v. Escobar* (1992) 3 Cal.4th 740, 755 [evidence of multiple abrasions and lacerations to the victim's back and bruising of the eye and cheek sustained a finding of "great bodily injury"]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836–837 [multiple contusions, swelling and discoloration of the body, and extensive bruises were sufficient to show "great bodily injury"].)

While "every bone fracture" is not great bodily injury as a matter of law, a jury "very easily" could find a broken nose constitutes great bodily injury as a matter of fact if it "results in a serious impairment of physical condition." (*People v. Nava* (1989) 207 Cal.App.3d 1490, 1497–1498, abrogated on other grounds as explained in *People v. Clark* (1997) 55 Cal.App.4th 709, 717, fn. 10; see also *People v. Guilford* (2014) 228 Cal.App.4th 651, 661, 662 [broken nose, bruised chin, swollen lip and red fingerprints on victim's neck]; *People v. Hale* (1999) 75 Cal.App.4th 94, 108 [broken teeth, split lip, and cut under eye]; *People v. Nitschmann* (1995) 35 Cal.App.4th 677, 680, 683 [defendant

12.

repeatedly punched victim in face and stomach, rammed his head into car door, and kicked him, resulting in a large gash to his face and profuse bleeding that required treatment at a hospital]; *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 [contusions and lacerations on the nose, elbow, thigh and lip from being punched in the head].)

The determination of "whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury.  [Citations.]  ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.]  Where to draw that line is for the jury to decide."  (*People v. Cross*, *supra*, 45 Cal.4th at p. 64.)  A jury's finding on great bodily injury will be affirmed if supported by substantial evidence.  (*People v. Cross*, *supra*, 45 Cal.4th at pp. 64–65; *People v. Escobar*, *supra*, 3 Cal.4th at p. 750, disapproving *People v. Caudillo* (1978) 21 Cal.3d 562.)

### E.   *Review of the Instructions*

We review de novo the question of whether a jury instruction correctly states the law.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

"Our charge is to determine whether the trial court ' "fully and fairly instructed on the applicable law." [Citation.]' [Citation.]  We look to the instructions as a whole and the entire record of trial, including the arguments of counsel.  [Citation.]  Where reasonably possible, we interpret the instructions ' "to support the judgment rather than to defeat it." ' [Citation.]"  (*People v. Mason*, *supra*, 218 Cal.App.4th at p. 825.)

"[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context ...."  (*People v. Stone* (2008) 160 Cal.App.4th 323, 331.)  While a single sentence in an instruction "may or may not be confusing, depending upon the context in which the sentence lies," an instructional error " ' "cannot be predicated upon an isolated phrase, sentence or excerpt taken from the instructions ...." ' "  (*People v. Rhodes* (1971) 21 Cal.App.3d 10, 21.)

13.

Instead, " '[t]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.]" (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016; *People v. Young* (2005) 34 Cal.4th 1149, 1202.)

### F.    Analysis

Defendant argues the definition of great bodily injury given in the CALCRIM instructions was misleading and ambiguous compared to those previously stated in the CALJIC instructions. Defendant asserts the instructions in this case allowed the jury to convict her on counts 3 and 5, and find the enhancements true, simply by finding she inflicted "moderate" harm on Deputy Brown.

Contrary to defendant's arguments, the instructions were not ambiguous or erroneous. Defendant's challenge is based on taking one phrase out of context of the entirety of the instructions. All of the challenged instructions that were given in this case defined great bodily injury as "*significant or substantial* physical injury. It is an injury that is *greater than* minor or moderate harm." (CALCRIM Nos. 875, 860, 3160, italics added.) These instructions did not allow the jury to find defendant guilty and the enhancements true upon the determination that Deputy Brown's broken nose only constituted "moderate" harm. Instead, the instructions expressly stated the jury had to find Brown's injuries were "significant or substantial," consistent with the well-recognized definition of great bodily injury.

The prosecutor's closing argument was consistent with the legal definition and instructions and asserted Deputy Brown's injuries were "significant or substantial," and also permanent unless Brown decided to have corrective surgery. Defense counsel did not dispute the instructional definitions or whether Brown suffered great bodily injury, but instead argued defendant was not guilty because she did not intentionally punch Brown, it was an accident, and/or she reasonably believed in the need to defend herself.

14.

Finally, we note the jury's findings on counts 3 and 5, and the enhancements attached to the other counts, were consistent with the evidence and instructions since Deputy Brown's broken nose and deviated septum, which would require surgery to repair, constituted great bodily injury. (*People v. Nava*, *supra*, 207 Cal.App.3d at pp. 1497–1498; *People v. Bustos*, *supra*, 23 Cal.App.4th at p. 1755; *People v. Guilford*, *supra*, 228 Cal.App.4th at pp. 661, 662.)

The instructions given in this case correctly stated the legal definition of great bodily injury, the prosecutor's closing argument was consistent with those definitions, defendant's substantial rights were not violated, and counsel was not prejudicially ineffective for failing to object to the instructions.

## II. The Court's Failure to Instruct on a Lesser Included Offense for Count 2[*]

In count 2, defendant was charged and convicted of attempting to deter an executive officer, Deputy Brown, by threat or violence (§ 69). Defendant contends the court committed prejudicial error by denying her request to instruct on a misdemeanor violation of section 148, resisting arrest, as a lesser included offense.

### A. *The Court's Duty to Instruct on Lesser Included Offenses*

"California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence." (*People v. Birks* (1998) 19 Cal.4th 108, 112, 77; *People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*).)

---

[*] See footnote, *ante*, page 1.

15.

"[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)

> "We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. [Citation.]" (*People v. Reed* (2006) 38 Cal.4th 1224, 1227–1228.)

"In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) The court is also not required "to instruct on necessarily included offenses when the evidence establishes that, if guilty, the perpetrator is guilty of the greater offense. [Citations.]" (*People v. Woods* (1992) 8 Cal.App.4th 1570, 1589; *Smith*, *supra*, 57 Cal.4th at p. 245.)

"We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

### B.    Section 69

In count 2, defendant was charged with attempting to obstruct an executive officer, Deputy Brown, by threats or violence in violation of section 69.

> Section 69, subdivision (a) states:

> "Every person who attempts, *by means of any threat or violence*, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, *or who knowingly resists, by the use of force or violence,* the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.)

16.

Section 69 "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence *to deter or prevent* an officer from performing a duty imposed by law; the second is *resisting* by force or violence an officer in the performance of his or her duty. [Citation.]" (*In re Manuel G*. (1997) 16 Cal.4th at p. 814, italics added; *Smith*, *supra*, 57 Cal.4th at p. 240; *People v. Brown* (2016) 245 Cal.App.4th 140, 151 (*Brown*).)

"The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*.' [Citation.] The actual use of force or violence is not required. [Citation.]" (*Smith*, *supra*, 57 Cal.4th at p. 240, italics added.)

"The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense. [Citation.]" (*Smith*, *supra*, 57 Cal.4th at p. 241.)

CALCRIM No. 2651 is the pattern instruction for the first method of violating section 69, that the defendant tried to prevent or deter an executive officer from performing that officer's duty by threats or violence and requires specific intent. CALCRIM No. 2652 defines the second method of violating section 69, resisting an officer using force or violence, and is a general intent crime. (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1419–1420, and fns. 5 & 6.)

As we will discuss below, the court gave CALCRIM No. 2651 to define the elements for count 2, based on the first method of violating section 69, and did not give any lesser included instructions.

## C.     *Section 148*

The gravamen of a section 69 offense is the defendant's use of force and violence; it is the crucial element that separates the felony from the misdemeanor offense of

resisting arrest in violation of section 148, subdivision (a)(1).  (See *People v. Hairston* (2009) 174 Cal.App.4th 231, 238.)

Section 148, subdivision (a)(1) states:

> "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

" 'The legal elements of a violation of section 148, subdivision (a) are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.  [Citations.]'  [Citation.]  The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence.  [Citation.]"  (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)  "Section 148 is most often applied to the physical acts of a defendant.  [Citation.]"  (*Ibid.*)

### D.      *Whether Section 148 is a Lesser Included Offense of Section 69*

Defendant contends misdemeanor resisting arrest (§ 148, subd. (a)) is a lesser included offense for a felony violation of section 69, subdivision (a).  The resolution of this question is dependent upon the unique definition of section 69 and the two ways it can be violated.

As explained above, there are two tests to determine whether an uncharged offense is necessarily included within a charged offense:  the statutory elements test and the accusatory pleading test.  (*People v. Reed*, *supra*, 38 Cal.4th at p. 1227–1228.)

### 1. Statutory Elements Test

Under the "statutory elements test," section 148, subdivision (a)(1) is not a lesser included offense of section 69. (*Smith*, *supra*, 57 Cal.4th at pp. 241–242.) A violation of section 148, subdivision (a)(1) "is similar to the second way of violating section 69 but is clearly different from the first way of violating section 69." (*Smith*, at p. 241.)

> "A person who violates section 69 in the second way – by 'knowingly resist [ing], by the use of force or violence, such officer, in the performance of his duty' – also necessarily violates section 148(a)(1) by 'willfully resist [ing] … any public officer … in the discharge or attempt to discharge any duty of his or her office or employment.' [Citation.] But it is possible to violate section 69 in the first way – by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty – without also violating section 148(a)(1). A person who threatens an executive officer in an attempt to deter the officer from performing a duty 'at some time in the future' [citation] does not necessarily willfully resist that officer in the discharge or attempt to discharge his or her duty under section 148(a)(1). Accordingly, section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense. [Citations.]" (*Id.* at pp. 241–242.)

### 2. Accusatory Pleading Test

Under the "accusatory pleading test," if an information only charges "the first way of violating section 69, i.e., that defendant attempted, through threat or violence, to deter or prevent an executive officer from performing a duty, then section 148, subdivision (a)(1) is not a necessarily included offense of section 69. (*Smith*, *supra*, 57 Cal.4th at p. 242.)

However, if accusatory pleading charges the defendant with "*both ways* of violating section 69," then misdemeanor resisting in violation of section 148, subdivision (a) would be a necessarily included offense of the charged crime. (*Smith*, *supra*, 57 Cal.4th at p. 242, italics added.)

### 3. Smith and Brown

The interaction between sections 69 and 148 was addressed in *Smith* and *Brown*.

In *Smith*, the defendant physically resisted jail guards and he was charged with two counts of violating section 69. The trial court denied the defendant's requests for lesser included instructions on section 148, and the jury found him guilty of both counts. (*Smith*, *supra*, 57 Cal.4th at pp. 238–239, 245.)

*Smith* addressed the two methods of violating section 69 and explained section 148 was a lesser included offense only under the accusatory pleading test if the information alleged the second method of violating section 69. (*Smith*, *supra*, 57 Cal.4th at pp. 240–243.)

*Smith* agreed with the defendant's argument that section 148(a)(1) was a necessarily lesser included offense based on the accusatory pleading test in that case:

> "[S]ection 148(a)(1) is not intrinsically a necessarily lesser included offense of section 69 because a defendant can violate section 69 in the first way, by attempting to deter an executive officer from performing a duty, without violating section 148(a)(1). But the amended information in the present case *alleged in both counts that defendant violated section 69 not only in the first way but also in the second way by forcibly resisting an officer*. As explained above, it is not possible to violate section 69 in this second way without also violating section 148(a)(1). Therefore, section 148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the amended information." (*Smith*, *supra*, 57 Cal.4th at p. 243, italics added.)

The majority opinion in *Smith* did not quote the information that was filed against the defendant. However, Justice Corrigan's concurring opinion stated the allegations in the two counts "closely tracked the statutory language of section 69. The charging document added the dates of the offenses, the county, defendant's name, and the names of the victims. It also charged the alternative ways of violating section 69 *in the conjunctive 'and' rather than the disjunctive 'or.*" (*Smith*, *supra*, 57 Cal.4th at p. 246 and fns. 1 & 2 (conc. opn. of Corrigan, J.), italics added.)[4]

---

[4] In the concurring opinion, Justice Corrigan agreed section 148, subdivision (a)(1) was a lesser included offense in *Smith* based on the way in which the violation of section 69 was alleged in the information filed against the defendant. Justice Corrigan acknowledged the majority opinion's reliance on *People v. Barrick* (1982) 33 Cal.3d 115,

*Smith* further held the determination that section 148 was a lesser included offense was not dependent on "an examination of the evidence adduced at trial" where "the prosecution elects to charge the defendant with multiple ways of violating the statute." (*Smith*, *supra*, 57 Cal.4th at p. 243.)

> "Where an accusatory pleading alleges both ways of violating section 69, the trial court should instruct the jury that if it finds beyond a reasonable doubt that a defendant committed either way of violating section 69, it should find the defendant guilty of that crime. If not, the jury may return a verdict on the lesser offense of section 148(a)(1) so long as there is substantial evidence to conclude that the defendant violated section 148(a)(1) without also violating section 69." (*Id*. at pp. 244–245.)

"The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense. But so long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense." (*Id*. at p. 244.)

While *Smith* found the misdemeanor was a lesser included offense, it further held the court did not have a sua sponte duty to instruct because the lesser offense was not supported by the evidence: "In the April 21, 2008 incident, defendant physically resisted and punched the guard at the Men's Central Jail. In the September 11, 2008 incident, defendant again physically resisted the guards and was subdued only after the deputies used Tasers and foam and rubber projectiles. Defendant was either guilty or not guilty of resisting the executive officers by the use of force or violence in violation of section 69.

---

to reach that conclusion, since *Barrick* held that when both methods of violating a statute (Veh. Code, § 10851) are alleged in the conjunctive, then those allegations may be considered when determining whether there are any lesser included offenses. Justice Corrigan disagreed with *Barrick* and urged the court to reconsider the decision in the future. (*Smith*, *supra*, 57 Cal.4th at pp. 245–249 (conc. opn. of Corrigan, J.).)

There was no evidence that defendant committed only the lesser offense of resisting the officers without the use of force or violence in violation of section 148(a)(1). [Citation.] Accordingly, the trial court was not required to instruct the jury on the necessarily included lesser offense of section 148(a)(1)." (*Smith*, *supra*, 57 Cal.4th at p. 245.)

In *Brown, supra*, 245 Cal.App.4th 140, the defendant was charged with a felony violation of section 69 when he resisted arrest and had a physical altercation with officers. The information alleged both ways of violating section 69 by using the conjunctive "and" in the pleading. (*Brown*, at p. 153.) The trial court instructed the jury on the second method of violating section 69, resisting by force or violence, because that was "the sole theory the prosecutor pursued at trial." (*Brown*, at p. 151.) The trial court instructed the jury that misdemeanor resisting (§ 148, subd. (a)(1)) was a lesser included offense. On appeal, the defendant argued the trial court had a sua sponte duty to also instruct on misdemeanor simple assault (§ 240) as another lesser included offense given the conflicting testimony about the incident. (*Brown*, at pp. 145, 149–152.)

*Brown* held that based on the two methods of violating section 69, misdemeanor assault was not a lesser included offense under the statutory elements test. (*Brown*, *supra*, 245 Cal.App.4th at p. 152.) However, misdemeanor assault was a lesser included offense under the accusatory pleading test:

> "[A]lthough the prosecutor's trial theory was that [defendant] committed the second type of section 69 violation, the first amended information was not so limited. It alleged that [defendant] violated section 69 not just by attempting to deter or prevent the officer from performing his duties (which can be accomplished without force), but also by knowingly resisting the officers with force and violence. Because the accusatory pleading *used the conjunctive* to charge [defendant] with both ways of violating section 69, and it is not possible to violate the statute in the second way without committing an assault, we conclude that assault was necessarily a lesser included offense of section 69 under the accusatory pleading test. [Citation.]" (*Id.* at p. 153, italics added.)

*Brown* held the instruction error was prejudicial under the facts of that case. (*Brown*, *supra*, 245 Cal.App.4th at pp. 156–160.)

### E.     The Information

With this background in mind, we turn to the information and instructions given in this case,

The information alleged in count 2 that defendant violated section 69 because she did "willfully and unlawfully attempt by means of threats or violence to deter or prevent" Deputy Brown, an executive officer, "from performing a duty imposed upon such officer by law, *or* did knowingly resist by the use of force or violence said executive officer in the performance of his/her duty, in violation of … section 69, a felony."  (Italics added.) The information thus used the disjunctive "or" to allege count 2, identical to the statutory definition of section 69.

### F.     The Court's Denial of a Lesser Included Instruction for Count 2

At trial, defense counsel requested the court instruct the jury that a misdemeanor violation of section 148, subdivision (a)(1), resisting arrest, was a lesser included offense of count 2, felony resisting using force or violence in violation of section 69.

The court noted the prosecutor had already asked to instruct the jury with CALCRIM No. 2651 and elected the People's theory for count 2, "which is use of violence to try to prevent or deter an executive officer from performing the officer's lawful duties as opposed to the theory reflected in [CALCRIM No.] 2652, resisting by force or violence.  That's the one [the People] are requesting, the theory you are relying on.  I think it's supported by the evidence.  The argument would support either.  I have no problem with giving [CALCRIM No.] 2651."

The court further stated:  "And that's also … the way that your information is charged is consistent with what you are asking for.  So I would be inclined to substitute [CALCRIM No.] 2651 for [CALCRIM No.] 2652 while we discuss the issue of … Section 148(a) as a lesser to that."

23.

As for the lesser included instruction, the court stated that for the "prevent or deter by violence [theory], which is the one that [the People] have charged in the Information and you are asking for and arguing, [section] 148(a) is not a lesser of that. It is a lesser of the other theory, the [CALCRIM No.] 2652 theory by the accusatory pleading test. *But that theory isn't charged or reflected in the accusatory pleading filed by the People.* [¶] So at this point, at least, I would not be inclined to give [section]148(a) as a lesser to Count 2. But we will discuss it when you come back…." (Italics added.)

The court subsequently denied defendant's request to give a lesser included offense instruction for count 2:

> "Because the People are relying on, and I am instructing on the theory of violating … section 69 … set forth in instruction CALCRIM 2651 of attempting to prevent or deter an executive officer from engaging in the performance of their duty based on the accusatory pleading test, which I am informed by CALCRIM applies. *That is the only theory mentioned by the People in the accusatory pleading and that they are relying on.* [¶] I am not going to give [section] 148 as a lesser-included offense to Count 2 because, in the CALCRIM use notes, that is not a lesser-included offense to that prong of … Section 69." (Italics added.)

Defense counsel again objected. The court replied the People had limited "themselves to the theory set forth in [CALCRIM No.] 2651 by the related charges in the Information, since I'm told is in the context of the accusatory pleading test. [¶] I'm going to give [CALCRIM No.] 2651 and not the lesser-included offense as reflected, noted the reasons for it in the record."

The court instructed the jury on the elements of count 2 with CALCRIM No. 2651, on the first method of violating section 69 by trying to use force or violence to deter an officer.

The jury was further instructed that defendant was not guilty of any crime "if she acted without the intent required for that crime, but instead acted accidentally. You may

24.

not find the defendant guilty of any crime unless you are convinced beyond a reasonable doubt that he acted with the required intent."

In closing argument, the prosecutor argued that defendant committed count 2 by "trying to prevent Deputy Brown from performing her duty. Element No. 1, the defendant willfully and unlawfully used violence to try to prevent or deter Deputy Brown from performing her lawful duties. And when she acted, she intended to prevent or deter Deputy Brown in performing her lawful duty." The prosecutor argued that one of Brown's duties was to take an inmate to her cell, and that's what Brown was trying to do. Defendant did not want to go into the cell and punched Brown in the face because defendant "was trying to prevent [Brown] from accomplishing that goal."

### G.    *Analysis*

Defendant contends the court erroneously rejected defense counsel's request for an instruction on section 148 as a lesser included offense of count 2 because, as in *Brown* and *Smith*, the information alleged both methods of violating section 69 so that under the accusatory pleading test, section 148, subdivision (a)(1) was a lesser included offense of section 69. Defendant asserts the court had a sua sponte duty to give the lesser included instruction and the error was prejudicial.

It is settled that misdemeanor resisting is not a lesser included offense of section 69 based on the statutory elements test. It can only be a lesser included offense under the accusatory pleading test if the information alleges both methods of violating section 69.

In contrast to *Smith* and *Brown*, however, the information in this case did not allege that defendant violated both methods of section 69 by using the conjunctive word "and." Instead, the information alleged the two methods of violating section 69 in the disjunctive, using the word "or," in the identical words of section 69, to state the allegation in count 2.

As explained above, section 69 states:

25.

"(a) Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, *or* who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.)

The full allegations for count 2 in the information stated:

"On or about December 1, 2016, Belinda Isabel Quinonez, did willfully and unlawfully attempt by means of threats or violence to deter or prevent Deputy Christine Brown, KCSO, who were then and there executive officers, from performing a duty imposed upon such officer by law, *or* did knowingly resist by the use of force or violence said executive officer in the performance of his/her duty, in violation of … Section 69, a felony." (Italics added.)

Thus, *Smith* and *Brown* do not control this case since the information did not allege both methods of violating section 69 in the conjunctive.

When the accusatory pleading simply states the statutory elements of the charged offense, the statutory elements test applies to determine whether a lesser included offense instruction should be given for the charged offense. (*People v. Munoz* (2019) 31 Cal.App.5th 143, 155–156.) "[W]hen applying the accusatory pleading test to determine whether one offense is necessarily included in another, courts do not look to evidence beyond the actual pleading and its allegations regarding the purported greater offense. [Citations.]" (*Id*. at p. 156.)

"Indeed, in cases such as this one in which 'the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense.' [Citations.]" (*Ibid*.)

In this case, count 2 of the information alleged a violation of section 69 in the exact words of the statute, with the exception of identifying Deputy Brown by name as

the executive officer who was the victim of the offense, and, more importantly, using the disjunctive "or" in describing the two prongs of section 69.

" 'When … the accusatory pleading describes a crime in the statutory language, an offense is necessarily included in the greater offense when the greater offense cannot be committed without necessarily committing the lesser offense.' [Citations.] *The statutory elements test is the only one relevant here.*" (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1532–1533, italics added.) Since "the information … simply tracked [the statutory] language without providing additional factual allegations, we focus on the elements test." (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) As defendant concedes, section 148, subdivision (a)(1) is not a lesser included offense of section 69 under the statutory elements test.

Defendant asserts the court improperly denied her request to give the lesser included instruction because it relied on the prosecutor's apparent election to proceed under the first method of violating section 69, and the prosecutor's election was irrelevant to the court's sua sponte duty to instruct. Defendant contends that the court erroneously relied on the trial evidence to reject the lesser included instruction, and that it should have solely relied on the accusatory pleading. As we have already explained, however, the information in this case did not allege both prongs of section 69 in the conjunctive and, in contrast to *Smith* and *Brown*, section 148, subdivision (a)(1) was not a lesser included offense under the accusatory pleading test.

In addition, the court did not erroneously rely on the prosecutor's apparent election when it decided to instruct the jury with CALCRIM No. 2651 on the first method of violating section 69. In *People v. Rasmussen*, *supra*, 189 Cal.App.4th 1411, the defendant was charged with violating section 69. The information "track[ed]" the language of the statute and "alleged both types of offenses contained within section 69" (*Rasmussen*, at p. 1418) and used the disjunctive "or" – that the defendant "violated section 69 because he 'did willfully, unlawfully and feloniously attempt by means of

threats or violence to deter or prevent Officer Jorge Sanchez, who was then and there an executive officer, from performing a duty imposed upon such officer by law, *or* did knowingly resist by the use of force or violence said executive officer in the performance of his or her duty.' " (*Rasmussen*, at p. 1418, fn. 3, italics added.) The prosecutor "elected to rely on the second type of offense," that the defendant resisted the officer. The defendant asked the court to instruct on both theories. The court declined because of the prosecutor's election and gave CALCRIM No. 2652 on the second method of violating section 69. (*Rasmussen*, at p. 1419.) *Rasmussen* held the court correctly instructed the jury on the "resistance prong of section 69" based on the prosecutor's election. (*Ibid*.)

While the trial court in this case arguably may have improperly cited the prosecutor's apparent election as the reason for denying the instruction on the misdemeanor offense,[5] it is clear that the accusatory pleading simply used the statutory language of the offense such that section 148, subdivision (a)(1) was not a lesser included offense of section 69. Thus, the court did not have a sua sponte duty to instruct on misdemeanor resisting as a lesser included offense of section 69. (*People v. Lopez*, *supra*, 129 Cal.App.4th at pp. 1532–1533.)

## III.    The Prior Prison Term Enhancements[*]

After defendant was convicted of the charged offenses, the court found true the allegations that defendant had three section 667.5, subdivision (b) prior prison term enhancements, based on her prior convictions for (1) violation of section 69, felony

---

[5] " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

[*] See footnote, *ante*, page 1.

resisting arrest, in 2005; (2) violation of section 243.1, felony battery against a custodial officer, in 2007; and (3) violation of section 243.9, subdivision (a), battery by gassing a peace officer or employee of a local detention facility, in 2010.

At the sentencing hearing, the court imposed an additional one-year term for one of the prior prison term enhancements. According to the abstract of judgment, the court stayed the other two section 667.5, subdivision (b) enhancements.

On October 8, 2019, Governor Newsom signed Senate Bill No. 136 (2019–2020 Reg. Sess.; S.B. 136) into law. It amends section 667.5, subdivision (b) so that the additional one-year term can only be imposed if the defendant served the prior prison term for a sexually violent offense:

> "(b) Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, *the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code*, provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended." (Italics added.)

S.B. 136's amendment to section 667.5, subdivision (b) became effective on January 1, 2020.

On appeal, defendant contends, and the People concede, that the amendments to section 667.5, subdivision (b), resulting from the enactment of S.B. 136, retroactively apply.

We need not remand the matter for resentencing. Instead, we strike the court's true findings on the three enhancements and the one-year term imposed for the one section 667.5, subdivision (b) enhancement. Defendant's aggregate term must be modified to eight years.

29.

# DISPOSITION

Defendant's instructional issues are without merit.

The court's true findings on the three section 667.5, subdivision (b) enhancements, and the imposition of the one-year term for one of those enhancements, are stricken. Defendant's aggregate term must be modified to eight years. The trial court is directed to cause to be prepared an amended abstract of judgment reflecting this modification. The trial court shall have a certified copy of the amended abstract forwarded to the appropriate authorities. As so modified, the judgment is affirmed.


_____
POOCHIGIAN, Acting P.J.

I CONCUR:


_____
DETJEN, J.

30.

PEÑA, J., Concurring.

I concur. Nothing in the instructions or the argument of the parties could have misled the jury into finding the defendant, Belinda Isabel Quinonez, inflicted great bodily injury solely on the basis she inflicted injuries that were greater than minor harm. The jury was correctly instructed on the issue and any potential ambiguity in the great bodily injury definition was theoretical at best. Unfortunately, the prosecutor in the recent case of *People v. Medellin* (Feb. 20, 2020, F076022) __ Cal.App.5th ___ actually argued, based on the CALCRIM No. 3160 definition of great bodily injury, that minor harm alone was sufficient for the jury to find great bodily injury. (*Medellin*, at p. __ [slip opn. at p. 12].) There, the prosecutor argued:

> "'[I] want you to focus on one word here; right? This is at the second sentence "or," right? Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. So what is—what is sufficient; right? What do you need? An injury that is greater than minor. That is all I need to prove. And we submit that when someone gets stitches, then it is more than minor. We submit that when someone has to go to the hospital, that it is more than minor. We submit that when someone is scarred for a very long period of time or when your dentures get knocked loose, that is more than minor. And notice this is "or" right here. And according to the law, it is sufficient.'" (*Ibid.*)

The *Medellin* case is obviously distinguishable from this case, where no such argument was made. Nonetheless, trial court judges must remain vigilant to prohibit or correct erroneous arguments such as the one quoted above. I leave it to the Advisory Committee on Criminal Jury Instructions to determine whether the limited potential for the erroneous application of the instruction warrants revision of the instruction's language.

_____
PENA, J.